Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judge Randy Smith and I are honored today to have Judge Jack Toobin here. I said Toobin. Toonheim. Toonheim here. He's the Chief Judge of the District Court in the state of Minnesota. We're pleased that he's here to help us today. Thank you. We have a number of matters on the calendar, but the first three have been submitted. We'll do that officially at this time. The first one is Opiko-Alfaro v. Barr. The second one is Wakeda v. Barr. And the third is United States v. Weber. Those three matters are now officially submitted. The first case for argument this morning is National Union Fire Insurance Company of Pittsburgh v. Zillow. Will counsel please proceed? Good morning. Good morning, Your Honors. May it please the Court. My name is Selina Lindy and I represent Zillow, the appellant in this insurance coverage action appeal. At this time, I would like to reserve two minutes for rebuttal. Okay, we'll try to help you, but keep your eye on the clock, please. I will, Your Honor. Today I will be addressing the following two issues. One, the District Court erred when it rewrote the unambiguous language of the policy and determined that the takedown notice and the VHT action were a single claim. And two, the District Court erred by dismissing Zillow's counterclaims regarding National Union's duty to defend as moot. Can I get some clarification from you, please? Yes, Your Honor. This, of course, is a claims-made policy, the one that's directly here, but also the predecessor claim from roughly July of 2013 to June of 2014. If I understand correctly, what you call the takedown notice was given to Zillow during the term of the first of the two policies I mentioned. Is that correct? That is correct, Your Honor. And do you agree that it was a demand letter or a claim, the takedown notice? Yes, Your Honor, we do. And is there anything in the record that clarifies why Zillow didn't make a claim during that period? No, Your Honor, it's not within the record. Okay. But I would submit that it doesn't need to be, and this is why. This policy is a claims-made policy, but it operates differently than the majority of claims-made policies that the panel might be familiar with, and that's because of the specific language of this policy. Okay. Now, Your Honors, the clear and unambiguous language of the national union policy at issue at bar explicitly spells out when two claims arising out of the same claim will be treated as a single claim. This is the limited integration clause, and this clause is in the record at ER 95. Your Honors, that limited – That's a clause that's in other contracts, right? I'm sorry, Your Honor? Is that a clause in this contract? Yes, that's the clause in this particular policy. And this clause, this limited integration clause states, if written notice of a claim has been given to the insurer, then any subsequent claim made against an insured arising out of, based upon, or attributable to the facts giving rise to such claim shall be considered made at the time such notice was given. Well, wait a minute. We, of course, read, again, 95 because you called our attention to it. But, again, a claims-made policy, unless there's something specifically referring to a different policy, refers to the policy of the – refers to the term of the policy in question. So I read that clause as referring to whatever occurs during the term of the policy. I call it the second policy. If that's right, what does that have to do with whatever happened in the term of the previous policy? It doesn't refer to the previous policy. It doesn't, Your Honor, and that's the point. The only place in this entire policy where you can relate claims to make a single – two claims into a single claim is this clause. In other policies – Well, with respect, let's assume, hypothetically, that the takedown notice had been given on – during the first week of the second policy, but the actual lawsuit wasn't filed until the last week of the second policy. I would then understand this paragraph to say, you know, the fact that you didn't do anything – well, actually, it says if you give us the information, then it's going to relate back. So I think giving the information would help. I fail to see how this particular paragraph carries the day for you. I get your point, but I still look at this as two different policies, one where the takedown notice was given, no claim was – no assertion was made of coverage at that point, and you get a second one later on. And I think the issue is, are they the same claim? And I know you dispute that. Am I missing something? Well, I think you are, Your Honor, and I think that this clause is critical, and I'll tell you why. It's critical because you have to read the policy as a whole. And the only place in this entire policy – the critical, critical question here is, when do two claims become a single claim? No one's disputing that the VHT action is a claim. No one's disputing that the takedown notification is a claim. But where in this policy does it tell you what you do with two claims and when you make it into a single claim? We submit this is the only place in the policy where it actually tells you that two claims at some point in time would become a single claim. Other policies – yes, Your Honor. Go ahead. Other policies – I mean, there's no question. There's no question at all that law across the country is replete with cases where the standard integration clause, which deems that all related claims are a single claim, made at the time that claim was first reported, that's the standard integration clause that's found in the overwhelming majority of claims made policies. There's no question. But that's the language that says all claims arising from same events or related series of events as alleged earlier are deemed a single claim, and that language is not in this policy, correct? Exactly, Your Honor. But it's in other policies. It's in other policies. National Union made a choice. I mean, throughout the country you have those. And, in fact, what happens in those cases, the policyholder often loses. It's considered a trap for the unwary. And, in fact, courts across the country are doing things about it. They're writing regulations. They're having judicial decisions that require prejudice and other items. But we're not asking this court to go that far. We don't have to. All we need to do is direct you to the language in this policy. I understand your argument. But it seems to me that what we're really arguing about, what does claims first made mean? And given your interpretation, it means one thing. Given your opponent's interpretation, it means another. Doesn't it suggest that simply because we're really arguing about claims first made, that you're really saying a claim can be made in some situations more than once, and the insurer is saying, no, claims first made are claims first made. And once made, done. And they can't make them again. And so we're trying to make this policy work. Wouldn't that be, then, a very good reason for us to say this is ambiguous language? At an absolute minimum, Your Honor. And that was my second point on this issue. At an absolute minimum, it's ambiguous. So if it's ambiguous, what is my procedure at this point? Washington law is clear on that. The Supreme Court has held that all ambiguities must be construed against the insurer. That isn't what Washington says. Washington says I'll construe the ambiguities against the insurance company if there's no other extrinsic evidence which may be introduced to clarify the ambiguity. So wouldn't I, in that instance, if it's ambiguous, return it to the district court to determine if there's some extrinsic evidence that might be used that might clarify this ambiguity? No, Your Honor. I would say that you don't need to do that. But let me address your... Well, all you're saying is there's no extrinsic evidence. Let me address your... Can I back up and address the first thing that you said? Sure. So you're right. The National Union is relying on the three words claims first made. And those three words, they still have meaning under this policy. What they mean under this policy is that... Well, what you're suggesting they mean is what you're about to say, which I've read in your brief. But the problem comes in that we're really talking about I look at the language.  Say there was a claim made in the original policy, the first policy, and there was also a claim made in the second policy. And you're saying the claim made in the second policy is, in fact, the suit. And, therefore, the suit made during the period, it ought to have been defended, and that's it. And simply because there's a claim made before doesn't make any difference. It's the same. It's a claim, it's a claim, it's a claim. It's really, if you will, a disjunctive way to make a claim. Either way. I understand that's your argument. On the other hand, if I'm determining what claims first made means, then I'm back to that's an ambiguity because I can see their interpretation as well as yours. But, Your Honor, I bring you back to the entire policy as a whole. And, you know, yes, it is called a claims-made policy. And, yes, those words appear. But those words have meaning when you look at the entire policy. There are seven places in this policy that make it clear the national union intended that there could be multiple claims under the same policy. There is no language other than the limited integration clause that makes multiple claims into a single claim. The cases cited by national union have language that specifically does that, language that deems all related claims made into a single claim. That language is absent from this policy. But, instead, we have seven other areas in the policy that lead to multiple claims. Well, but national union argues that if I look at the notice provisions of the policy, if I look at the way the policy is structured, and if I look at the fact it's a claims-first-made policy, that their interpretation thereof is the correct one. But, Your Honor, then you... And all you're suggesting is, no, you look at this other language and it isn't. In my book, that makes it ambiguous. Again, Your Honor, with due respect, I submit that when taken as a whole, it is clear that this was the intent of national union... All right, but doesn't that have to go back to the district court, as my colleague... If ambiguous, it would have to go back to the district court. If ambiguous, it has to go back to the district court. Can I switch you to a little different subject? Because you both have done a nice job with your briefing, so we get your point there. But I want to talk about the attorney fees. Endorsement number five has some very specific requirements. There's a list of counsel. They give it to you. It looks to me like Zillow didn't do any of that. It hired two separate outside counsels, didn't get the agreement. They didn't... Basically, they just didn't follow endorsement number five. And in the last provision of endorsement number five, it says, basically, if you don't follow this, you don't get paid. Am I wrong? Yes, Your Honor, you are. Okay, why? The clause has three different parts, and the third part of that clause actually allows for some negotiation back and forth. What happened in this case is that we did communicate with National Union regarding defense counsel. You told them who you'd hired. And they came back and were in discussions with us about the rates of panel counsel and using our preferred firm under panel counsel rates. They stopped that. They stopped the communications about the counsel. They never said, okay, we're done negotiating, use firm A. That never happened. Instead, they ignored us. And, in fact, when we went to them and asked for consent for certain expert fees, other fees, they said we can neither consent nor deny. They refused, and I would submit that they breached that. Well, but all you're suggesting is we didn't go through and get the, if you will, the confirmation by National Union for this counsel, but because we went thereafter and asked them to go forth and approve the counsel we'd already chosen, and they never said, no, we won't approve, that the policy allows it? Your Honor, first, I submit that before this court right now is whether or not our motion for the duty to defend was moot, as the court underneath said. That's just not the case. What our issue here now is that even if you were to find against Zillow on the coverage and the indemnity issue, this court still has a duty to follow the law under Immunex, the Supreme Court case in Washington that says any carrier acting under a reservation of rights has an obligation to pay that defense until a determination by the court, and it's directly on point. You don't have to pay the defense that the insured wants to hire. You pay for a defense. You pay for the defense of the firms you want to hire to defend the insured, but you don't need to pay for the insured's defense. The defense the insured should take who you want to defend. Your Honor, they never said use firm A. We were in the middle of the negotiations. You never asked. You just went ahead and hired whoever you wanted. Didn't they give you a list of people? There is a panel counsel list, but regardless, they were operating under a reservation of rights, and when you operate under a reservation of rights, the controlling law here is the Immunex Supreme Court case, which is controlling on this court, and there is no question whatsoever under the facts as presented to the district court that National Union owes the defense up until the time that the district court made their order. It's actually explicitly spelled out exactly why and how it works. But the defense they have to pay is not the defense you choose to make. It's the defense they choose to make for you. Your Honor, I submit that's a question of fact that would go back to the district court after it's determined whether or not it's a duty to defend. Why is it a question of fact when the policy is pretty specific? You choose one of my lawyers or you don't get paid. Because the policy doesn't say that. The third section gives the actual ability. The policy says that if you have defense counsel not select in accordance with policy, the policy in Endorsement 5, it shall not be coverable. That's pretty clear language, isn't it? And isn't that exactly what Zillow did? Your Honor, I see I only have 30 seconds less for rebuttal. We'll give you a little extra time. Please answer your question. It's all in Clause 3, Your Honor. And if I can turn your attention specifically to that clause on Endorsement 5. Endorsement 5, Clause C, in the event the insured cannot select legal counsel from the list of chosen counsel due to 1, 2, or 3 other circumstances which use the unlisted counsel is both reasonable and necessary, the insurer and the insured shall jointly agree upon counsel who will defend the insured in such matter. If the insurer and the insured are unable to agree upon the selection of defense counsel, the insurer shall select defense counsel. But you didn't do the intermediate steps. They never selected defense counsel. But you didn't do the intermediate steps. They stopped. That's not true. We were in communications with them. We sent them. You said we've hired these people. That's correct, which is exactly the people the National Union had approved of before for Zillow to hire. Well, their case is not this one. That's correct. And we were in the middle. And, Your Honors, they could have at that point in time done anything. They could have said no. But instead, what did they do? They started a negotiation. They asked us about the panel counsel rates. They said, well, if the firm uses the panel counsel rates, and then they went silent. And instead of filing a declaratory judgment action, which they should have done, which they didn't do until a year after exactly to the date, one year after, they specifically asked us to withdraw our tender. They could have done that. They didn't. And as a result, the Immunex court is directly on point and mandates that this court find the duty different. Appreciate your argument. We'll give you a little extra time when we hear from them. Thank you. Let's see what National Union has to say for itself. May it please the court. My name is Gabe Baker, and I represent National Union Fire Insurance Company of Pittsburgh, Pennsylvania, the appellee of this case. I think the best place to start is with the policies insuring agreement, which I agree with the panel that that is the key question on the issue of whether coverage exists. The claims first made provision in the insuring agreement, I submit, is not ambiguous. The claims first made provision has been applied in numerous cases in Washington, including the Sea Shepherd case. We're not talking about what they do in other cases. We're looking at the language. So go to the language. Go to the language of this policy. What you call it or what you don't call it doesn't make a whole lot of difference under Washington law. What it says under Washington law is it's defined by the specific language of the insurance contract. And so I'm looking at the specific language of the insurance contract. I don't have to go to 411 cases. I just look at this language. So what language are you going to point me to to say that this is clear and unambiguous? In the policy, not some other case. The language that I submit is clear and unambiguous is the phrase claims first made itself. By its nature, the coverage says this is solely with respect to claims first made against the insured during the policy period and reported to the insurer pursuant to the terms of the policy. Isn't that what the coverage section says? Indeed, it is, Your Honor. And then it says that a claim can be both a written demand or a suit. The written demand for money, services, non-monetary relief, or injunctive relief, which is exactly what the demand letter is and which you've stipulated to. And it could also be a suit, a civil proceeding for monetary, non-monetary, injunctive relief. And you did have a suit. So the suit was first filed in July 8, 2015 against the insured within the policy period. Seems to me coverage. Your Honor, there would have been coverage had the claim not been first asserted in the earlier demand letter. It says it can't be first suited. What policy language says that it cannot be first asserted? That is the claims first made language. Well, just a minute, there's nothing in this claims first made language that says that at all. I guess, where in the policy does it say that because the demand or the suit involved the same wrongful conduct that they're a single integrated claim? Well, Your Honor. It doesn't say that. The only place it says that is the claims first made clause by its nature. Which is this coverage clause? Yes, that's the insuring agreement, which is the critical. I'm having a tough time. Everybody else who writes a policy like this, as your good colleague has suggested, puts in other language to make sure that it does relate back. All that happened in this case is the good judge on the district court left the policy, left the language of the policy, and started interpreting other cases in Washington to suggest what this should mean. But this is language I have to interpret here. So tell me, where in the policy do I come up with that? If I may, Your Honor, my colleague's suggestion that other cases addressing this issue rely on policy outside of the claims first made clause itself is simply incorrect. Alaska Interstate, Allegiance Benefit, on and on, the cases we cite, make their determination based solely on the claims first made language. That is the language that we rely on. I'll be fair. The cases that I read that the district court cites and that you want me to look at always explicitly require the integration of the factually related claims. That's ITC Investments, which the trial court cites specifically discusses the history of claims integration clauses and says that the claims first made clause is, in fact, the integration clause. If I go outside the policy itself and go to cases which are on both sides, I can get to where you want me to go? Your Honor, I respectfully submit there is not a single case going the other way. Not one case has held. West Tree Marina Management says that it's got to have require in the provisions explicitly requiring the integration of the factually related claims. Attiger and Associates versus Hartford says the same thing. West Rec Marina is a perfect example. The holding in West Rec Marina specifically says, interprets the claims first made clause, and because of that clause says that there's no coverage when a demand letter is made in one period and a suit is filed in the next. It then goes on to say that its conclusion is supported by a separate claims integration clause. But if you read that case, it is clear that the decision was based on the claims first made clause. Can I move you to the language of the previous claims policy? Where in that, I'm talking about July 2013 to July 2014, where in that policy is there language that would oblige Zillow to make a claim based on the July 2014 demand letter? That policy includes a notice provision that requires Zillow to report any claim as soon as practicable, but in no event later than 45 days after the policy expires. The letter came, I don't know whether it was exactly the time the other one terminated, but it was pretty close. It would get it into the new period. I guess what I'm struggling with, and I think it's the same thing with Judge Smith, is that you've got your historical information section says you don't need to say anything about a previous policy. You've got a claim made virtually on the eve of the one policy finishing and the new policy beginning that can stretch over in the new policy, but they don't seem to be tied together in the way that my colleague indicated. Isn't that almost on its face ambiguous? I don't think it is, Your Honor, and I also don't think it matters per se that there was a prior policy. What the policy at issue says is that there's only coverage if the claim is first made. So even if that earlier policy hadn't existed, the demand letter was still a claim first made before the policy incepted. Okay, but you didn't make, I guess they didn't make a claim on the letter. They made a claim on the suit. Why did your policy not require any disclosure? Indeed, it says don't refer to anything in the previous period. What were you thinking? Well, Your Honor, that is specifically because the prior policy did exist and already required Zillow to notify the National Union of any claims, so it would have been unduly But in this case, it stretched into roughly 45 days into the new policy period, and you say don't talk about it. Well, that's correct, and, you know, Zillow could have given notice of the demand letter up until 45 days into the new policy period, but it chose to do that. It chose not to do that. Let's look at your exclusions. I mean, I looked at your exclusions. It would seem to me that had been a real good way for the district court to have ended this case, look to the exclusions and decide. But the only exclusion clause that I found says this excludes claims alleging, arising out of, based upon, or attributable to any wrongful acts or related acts thereto. Then, this is the bad language, alleged or contained any claim which has been reported or any circumstance of which notice has been given under any prior policy. So they're excluded only if notice has been given or it has been reported. It could have easily said which was received in any prior period, and you'd be done. Well, Your Honor, I don't think there was any need to include an exclusion when the insuring agreement itself explicitly limits coverage to claims first made during the policy period. That sounds good, but when you're trying to decide if, in fact, this is clear and unambiguous as you want it to be, it doesn't seem logical that in the exclusion you would only exclude claims for which notice has been given or have been reported, not claims in which they were received in a prior period. That would seem to emphasize the fact you can do two different claims, and as long as one of the claims happens in the period in which the insured is in, they are covered. Well, Your Honor, again, I believe that the claims first made clause itself does address that. Court after court in both Washington and outside of Washington have found that to be unambiguous and have applied it to deny coverage in just these circumstances. So I do not think an additional exclusion is necessary to address this. I assume that National has included single integrated claim language in policies. You know how to put a policy language provision like that into policies, correct? That is correct. And it's not here, right? The claims first made provision is the integration clause in this policy. But it's, okay, it doesn't say precisely that single integrated claim based on all different factual elements language that we're looking for, correct? It does not have an additional integration clause beyond the insuring agreement. So why doesn't that make the whole question ambiguous? The, you know, alternative under Washington law, alternative policy language, language that is not in the policy to issue is only relevant if, in the first instance, the policy language is ambiguous. Here, claims first made is simply not ambiguous as a matter of Washington law. So you don't even get to the next step of considering how the policy could have been written differently. I'd like you to address the issue of endorsement number five. Your opposing counsel suggests that there was an ongoing colloquy between Zillow and your client about which lawyers should be selected, and apparently they're saying that ultimately you were unable to reach agreement and therefore they were entitled to hire the lawyers themselves. What's your response to that? Your Honor, there was no ongoing colloquy regarding defense counsel, unfortunately, but that is because Zillow blatantly disregarded its obligations to select panel counsel from the list provided by National Union. And the facts on this are absolutely clear. National Union's initial communication provided the list. Zillow ignored the list and instead, a month later, said, oh, here's the counsel we provided, we selected, and by the way, here's this demand letter that's been floating around for over a year that we never told you about. At that point, National Union, over a period of six months, sent four separate letters to Zillow, reserving rights, requesting information, and inviting a discussion. Zillow refused to respond until National Union demanded a mediation as the policy provides for. And when we're talking about a delay, let me step back. At that mediation, that was the first time that Zillow disclosed that it had ran up big defense cost bills through not one but two different non-panel counsel firms that it was now asking National Union to pay for. At that point, as soon as it found out about this, National Union sent another letter, again, specifically quoting Endorsement 5, which, by the way, has a three-step process. The first step is you pick from our list of firms. If you can't do that, we work together to pick. You know, and the third step, just to finish it, is that if you can't agree, it's National Union's choice. So it could not be more clear. Or the insured's choice. National Union's. And that is consistent with Washington law. That is not surprising. Well, isn't that what policy said, that it was the insured's right to pick if you couldn't agree? No, Your Honor. I think the conclusion in the third step is that if they cannot agree, National Union chooses. So obviously there were negotiations. Obviously there were negotiations back and forth. Something went on during that period of time. I mean, both sides claim the other side didn't respond. Why shouldn't Zillow be allowed to develop factually the question of whether there might be a waiver of the Endorsement 5 clause or compliance with the policy as they believe they did? Why shouldn't that be developed factually rather than just dismissed? Well, Your Honor, there already is a factual letter, a factual record, developed regarding selection of defense counsel and the timing of the reservation of the rights letters and discussions. And neither before the trial court nor in its briefing to this court has Zillow identified the facts that it would plead to amend its counterclaim in order to develop a viable waiver claim. And without that, there's simply no basis to proceed with that. Okay. Can I ask you this? Does the record contain information that was disclosed to the insurance company at the time of your mediation or earlier that shows that the counsel that was retained by Zillow, did that occur at ab initio or are there bills that go right back to the very beginning? What do they show? The bills go back to the beginning. So it appears that Zillow retained their non-panel counsel immediately when the VHT lawsuit was filed. Okay. Any other questions about my colleagues? I have one more. We're in front of us with a duty to defend claim, and you've heard counsel's argument about duty to defend, regardless of the fight about counsel, that you had a duty to defend and you did not defend. How do you respond? I respond that National Union fulfilled its duty to defend by offering a defense via panel counsel, which is exactly what they are supposed to do under Washington law and the terms of the policy. And, you know, National Union could not force Zillow to change its counsel. So there was nothing further that National Union could do to fulfill its duty when Zillow rejected the defense that was offered. Let me go one further. In Idaho, when there's a duty to defend and the insured does not want counsel that the insurer suggests that they have, the insurer selects the attorney, and the attorney sits with, if you will, the insured's counsel and tries to do the defense together. It's kind of like the California law that suggests that that's the way it ought to be. Is Washington law the same? No, Your Honor. I think you're referring to Kumis counsel in California. The only reason I didn't say Kumis is the California case. Yeah. Washington has specifically rejected the concept of Kumis counsel because in Washington, defense counsel's only attorney-client relationship is with the insured and not the insurer. And so in Washington, if the insured refuses to accept counsel tendered by the insurer,  that is correct, Your Honor. But Zillow says that National, during this process, did express a willingness to allow this particular law firm, Sussman Godfrey, I believe, to represent subject to reimbursement at National's rates. If that is proven to be true, and I think that's just a proposed allegation at this point, why wouldn't that be a waiver of Endorsement 5? A few things about that statement, Your Honor. Number one, the letter that Zillow is referring to is not in the record. They make an allegation about the contents of that letter in a brief, but it's not in evidence. But the letter itself was an outgrowth of the mediation. It was an ongoing mediation communication as the parties discussed various options to try to resolve their dispute. It was in no way, and so because it's a mediation communication, it would not be admissible. And beyond that, in no uncertain terms, National Union did not commit to paying any portion of non-panel counsel's bills. This was a discussion for settlement purposes where the parties were considering options. Well, but the problem comes, and this is why I'm glad my counsel keeps going on there and I let him go forward, if in fact there's evidence which could be considered and might make this claim not futile, shouldn't we send it back and let the district court decide that? Your Honor, there is no evidence that National Union- Some evidence, but not in the record, evidently. The so-called evidence is a letter protected by ER 408. It's a settlement communication, and it's not admissible evidence. Other questions? All right, thank you, counsel. We'll give you a couple of minutes to respond. We'll try not to interrupt you, but I can't promise. No, no, no worries.  Thank you, Your Honors. I'll be brief. I submit that you have to look at the policy as a whole. The only thing National Union has pointed to are three words that say claims first made. Those three words still have meaning under Zillow's interpretation of the contract, and there are seven places in this policy that indicate that National Union made a choice in providing this language to Zillow, that they expected that there could be multiple claims under the same policy. This is a contract, and you can't take one contract and link it to others unless there's something in the language of the policy that does that. Your Honors, the critical question, again, is just when two claims become a single claim. And unlike the case law all across the country, and unlike the only Washington case that the District Court and National Union relied upon, Sea Shepherd, which has that language, deems multiple claims a single claim. There's nothing in this policy that does that, and there's multiple areas that show that they were giving the flexibility to the policyholder. On the second point, Your Honor, the Immunex court is controlling. National Union has never disputed they were acting under a reservation of rights. Even if this court were to find that maybe, perhaps, Zillow breached the endorsement, they would still have to wait until there was a judicial determination. They would have had to file the declaratory judgment action, because that's how Washington law works. So they would have had to provide counsel to supervise or help or whatever happens to this counsel you've already chosen? No, they would have had to pay the defense, and the question of how much defense? I'm not sure that's what that case said. I guess I'll have to read it again. Please do, and also read Coinstar, which also goes through the exact same thing. And in the Immunex, they never paid a single dime. It's exactly like the facts in this case. To the same point, your opposing counsel pointed out that I had not realized this. If there's a disagreement between you, ultimately it's the insurer that picks the counsel. Absolutely, and they never once said— And it also says that if you hire people contrary to this, you don't get paid anything. You're right, Your Honor, but under Washington law, again, they were acting under a reservation of rights. To get the benefit of not having to pay a dime, they have to get a judicial determination, and then it's going forward, or they had to deny. They could have denied. They didn't. Okay. All right. Thank you, Your Honors. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: M. Smith, Jr., N.R. Smith, Tunheim